IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL RAY HARRIS,

    Petitioner,

v.

RANDY TEWS,

    Respondent.

No. C 11-80261 WHA

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

In this habeas action filed by a federal prisoner, the petition is **DENIED**.

## STATEMENT

The motion and the case record show the following facts. On September 16, 1988, petitioner, Michael Ray Harris, was sentenced by the State of California to twenty-five years to life for conspiracy to commit murder and a consecutive three-year sentence for bodily injury in Los Angeles Superior Court (Boudreaux Decl. ¶ 4). Subsequently, the United States District Court for the Central District of California issued a writ of habeas corpus ad prosequendum (*ibid.*). On January 4, 1989, the U.S. Marshals Service took custody of petitioner from the State of California, where he was serving the state sentence, in order for him to face prosecution in the Central District of California on federal drug charges. While the federal writ provided authority for the U.S. Marshals Service to take custody, the state sentence remained intact and running while petitioner was on writ.

On November 26, 1990, the district court sentenced petitioner to 235 months for (1) conspiracy to possess with intent to distribute cocaine, (2) for aiding and abetting the possession and distribution of cocaine, and (3) for possession with intent to distribute cocaine (*id*. ¶ 5). The district court ordered the 235 month federal sentence to be served consecutively to petitioner's state prison sentence. Petitioner was returned to state custody on January 11, 1991, after the federal court sentencing, with a detainer for the federal sentence (*id*. ¶ 6).

On October 7, 2011, petitioner was paroled from his state sentence and, on October 11, 2011, was released to the U.S. Marshals Service to commence service of the federal sentence in accordance with 18 U.S.C. Section 3585(a) (*id*. ¶ 7).

In October, the Bureau of Prisons was notified by the U.S. Marshals Service that petitioner was in federal custody, and he was transported to the Federal Detention Center at Dublin, California, pending designation (*ibid.*). The Bureau of Prisons completed petitioner's initial sentencing computation on October 18, 2011. The sentence computation was certified by the Bureau of Prisons on August 16, 2012, after receipt of additional documents from various sources. According to the certified sentencing computation, petitioner's federal sentence commenced on October 7, 2011, and his projected release date is October 27, 2028 (*id*. ¶ 8–18).

According to the records obtained by the Bureau of Prisons from the State of California Department of Corrections, petitioner's determinate three-year sentence was the first sentence to run. Petitioner completed that sentence on January 31, 1990, at which time his term of life with possibility of parole commenced (*id*. ¶ 8). Petitioner was released on state parole on October 11, 2011, and was discharged from state parole on March 6, 2012 (*id*. Exh. 5).

On December 16, 2011, petitioner filed the instant petition for writ of habeas corpus. Petitioner raises five claims. Claims 1–3 allege that the Bureau of Prisons failed to credit him with time served on state charges toward his federal sentence. Claim 4 alleges that petitioner is entitled to a correction of "inaccuracies, outdated, and irrelevant information contained in his [p]resentence [investigative] report ['PRS']" (Habeas 10). Claim 5 challenges the decision by the State of California on October 7, 2011, to honor the federal detainer by releasing petitioner to the U.S. Marshals Service. For the reasons set forth below, petitioner's motion is **DENIED**.

2

**ANALYSIS**

A district court may entertain a petition for writ of habeas corpus from a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2241(c)(3). The court shall "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." 28 U.S.C. 2243.

### 1. PRIMARY CUSTODY OF PETITIONER.

In his first claim, petitioner argues that he is entitled to credit toward his federal sentence for time spent in federal custody pursuant to the writ of habeas corpus ad prosequendum. Between November 26, 1990, and October 7, 2011, petitioner claims to have spent roughly four years and seven months in federal custody (Habeas 8, Opp. 3). Because the time petitioner spent in federal custody was already being credited against his state sentence, petitioner is not entitled to credit against his federal sentence.

The authority to compute a federal prisoner's sentence is delegated to the Attorney General, who exercises his authority through the Bureau of Prisons. *See United States v. Wilson*, 503 U.S. 329, 334 (1992). It is the Bureau of Prisons' responsibility to administer the offender's sentence and make the appropriate calculations. *Id*. at 335. "Computing a federal sentence requires two separate determinations: first, when the sentence commences; and, second, to what extent the defendant in question may receive credit for any time already spent in custody." *Goble v. Thomas*, No.11-0008, 2012 WL 4050074, at *8 (E.D. Cal. Sept. 13, 2012) (internal citations omitted).

A federal sentence commences "on the date the defendant is received into custody . . . to commence service of sentence at the official detention facility at which the sentence is to be served." 18 U.S.C. 3585(a). In this regard, the Ninth Circuit has recently joined other circuits in noting that:

> . . . courts have interpreted § 3585(a) to mean that a federal sentence cannot begin *before* the defendant has been sentenced in federal court. *See United States v. Gonzales*, 192 F.3d 350, 355 (2d Cir. 1999) (holding that a district court cannot "backdate" a federal sentence to the beginning of a state prison term on related state charges.); *United States v. Flores*, 616 F.2d 840, 841 (5th Cir. 1980)

3

> ("[A] federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served.")

*Schleining v. Thomas*, 642 F.3d 1242, 1244 (9th Cir. 2011) (emphasis in original). Pursuant to Ninth Circuit authority, the earliest possible date petitioner's federal sentence could have commenced is November 26, 1990, the date he was sentenced in federal court. While petitioner may have been in federal custody on November 26, 1990, petitioner's "sentence could not have begun to run until he was received at an institution either to serve his sentence, or to be transported to another institution where his sentence was to be served." *Thomas v. Brewer*, 923 F.2d 1361, 1369 (9th Cir. 1991) ("*Thomas*"). Petitioner was not transferred to begin his federal sentence until October 11, 2011, when he was transferred from San Quentin State Prison to the Federal Detention Center at Dublin, California (Habeas 6).

Our court of appeals' *Thomas* decision is dispositive of the date at which petitioner's federal sentence commenced. In *Thomas*, the defendant was arrested on state charges, but before he could be sentenced, was moved to federal custody to be charged with armed bank robbery. After the defendant was sentenced in federal court, he was returned to state authorities and sentenced in state court. The defendant began serving his state term at California State Institution in Chino, California, on February 23, 1965. *Ibid*. On November 23, 1966, the defendant was turned over to the U.S. Marshals Service to enable concurrent service of his federal and state terms. At an unknown date in December 1966, the defendant was delivered to the Federal Correctional Institute, Lompoc, California. *Ibid.*

The defendant in *Thomas* later contended in a federal habeas petition that he should be given credit for time in federal custody between August 4, 1964, and November 23, 1966. *Ibid*. The federal district court disagreed and denied the defendant's petition. Our court of appeals affirmed, rejecting the defendant's contention that he was in federal custody at the time of his initial federal sentencing on August 4, 1964, and that his federal sentence should therefore run from that date. *Ibid*. In so doing, our court of appeals upheld the district court's determination that the defendant's sentence commenced on November 23, 1966, *i.e.*, the date he was originally released from state prison and turned over to the custody of the U.S. Marshals Service. *Id*. at

4

1369. Our court of appeals held, "[defendant's] sentence could not have begun to run until he was received at an institution either to serve his sentence, or to be transported to another institution where his sentence was to be served." *Ibid*. The *Thomas* court noted its agreement with other circuit authority in accord:

> When an accused is transferred pursuant to a writ of habeas corpus ad prosequendum he is considered to be "on loan" to the federal authorities so that the sending state's jurisdiction over the accused continues uninterruptedly.

*Id*. at 1367 (citing *Crawford v. Jackson*, 589 F.2d 693, 695 (D.C. Cir. 1978)).

Applying *Thomas* to this habeas petition, petitioner was not "received into [federal] custody . . . to commence service of sentence at the official facility at which the sentence is to be served" when he was turned over to federal authorities in connection with the writ of habeas corpus ad prosequendum. Rather, despite being given over temporarily to federal authorities, petitioner was still in the primary custody of the State of California. As with the defendant in *Thomas*, petitioner was borrowed from state custody for federal sentencing, but the imposition of the federal sentence was deferred until after petitioner completed his state sentence. Petitioner's credit toward his state sentences continued to run while in federal custody. Accordingly, petitioner's first claim is **DENIED**.

### 2. CALIFORNIA PENAL CODE SECTION 669.

In claims two and three, petitioner argues that regardless of whether California had primary jurisdiction prior to his state parole, California Penal Code Section 669(a) "compelled" the Bureau of Prisons to execute petitioner's federal sentence before his indeterminate state-court sentence (Traverse 5). Petitioner cites California Penal Code Section 669(a), which states that "[w]henever a person is committed to prison on a life sentence which is ordered to run consecutive to any determinate term of imprisonment, the determinate term of imprisonment shall be served first." Petitioner offers no authority, however, to support his assertion that California's penal code applies to the execution of a federal sentence. Instead, petitioner relies on a single decision of the California Supreme Court that is not on point, *People v. Sewell*, 20 Cal. 3d 639, 642 (1978).

5

In *Sewell*, the California Supreme Court considered "whether by application of Penal Code [Section] 669 multiple life sentences which had been imposed by different states merge and become concurrent sentences." *Id*. at 641. *Sewell* did not involve a federal sentence, but rather multiple sentences of life imprisonment imposed by different states. The California Supreme Court held that the California sentence could merge with the other state sentence and that the defendant was not bound to live out each sentence separately regardless of which state incarcerated him first. *Id*. at 646. The *Sewell* decision did not, however, stand for the proposition that California's penal code trumps federal sentencing law. Petitioner has cited no authority that California can dictate how a federal sentence is computed or in which order it is served. In fact, our court of appeals has expressly held that "state courts are not constitutionally empowered to control punishment for federal crimes . . . [and] the [Bureau of Prisons] does not need to abide by a state's express desire to have its sentences run concurrent to a previously imposed federal sentence." *Del Guzzi v. United States*, 980 F.2d 1269, 1270 (9th Cir. 1992). Accordingly, Section 699 does not constrain the Bureau of Prisons' right to execute petitioner's federal sentence subsequent to the commencement of his indeterminate state sentence of life with the possibility of parole. Claims 1–3 are, therefore, **DENIED**.

### 3. PRESENTENCE INVESTIGATION REPORT.

In his fourth claim, petitioner argues that he is entitled to a correction of "inaccuracies, outdated, and irrelevant information contained in his [PSR]" (Habeas 10). Petitioner argues that he is in the uncommon position of "being designated, having his release date determined, and having his right to retroactive designation pursuant to 18 U.S.C. [] 3621(b) determined by the Bureau of Prisons, based on information contained with the [PSR] which was prepared some twenty-one and a half years ago" (*ibid.*). Petitioner requests that the Court "exercise its equitable powers to correct the inaccuracies in the [PSR] which . . . continue to affect his classification, housing and release date . . . by ordering amendments to, or the preparation of an addendum to" the PSR (Traverse 8). This order holds that petitioner does not have a right to "update" his PSR and his claim to amend it is **DENIED**.

6

Our court of appeals has stated that a district court sitting in habeas review may resolve inaccuracies in a PSR that relate to the term of the sentence:

> Thus, even if the [Bureau of Prisons] has no administrative procedure for resolving inaccuracies in the PSR, Saeteurn has the ability to bring a § 2241 habeas petition in which he may challenge his confinement. In *Lopez*, the prisoner was not required first to challenge the [Bureau of Prisons'] determination in an administrative proceeding before filing his habeas petition. The [Supreme] Court explained that the prisoner filed his habeas petition directly upon learning he was ineligible for early release. We are satisfied that a habeas petition brought pursuant to § 2241 is sufficient to safeguard a prisoner's right to be considered eligible for early release.

*United States v. Saeteurn*, 504 F.3d 1175, 1181 (9th Cir. 2007) (citations omitted).

While inaccuracies in the PSR may be corrected through habeas review, petitioner cites no authority for the proposition that a PSR must be updated throughout a term of confinement merely because information contained within the report has become stale. PSRs are written at the time of sentencing to aid the sentencing judge. While the Bureau of Prisons may consult these reports for a host of determinations following sentencing, the Bureau of Prisons is free to consider many sources of information in making its determinations, including events that have occurred post sentencing (Castillo Decl. ¶¶ 4–8). Cassandra Castillo, a Deputy Case Management Coordinator with the Bureau of Prisons states in a declaration that:

> The [Bureau of Prisons] has no authority to change a [PSR], it is a document of the United States Court. If new or different information comes to our attention and we verify the authenticity of the information, we rely on the corrected information; however, we never amend a [PSR]. . . .
>
> \*     \*     \*
>
> In Mr. Harris' case, it is natural to review the information that was in the [PSR], due to the passage of time and determine what information would need to be updated. The information the [Bureau of Prisons] relies upon in making programming decisions for and with Mr. Harris is current information, not only information written in a report in 1990. Attached as Exhibit 2 is the current Program Review Report . . . for Mr. Harris. He has participated in a Team meeting and a Program or Progress review every six months since he came into [Bureau of Prisons] custody.

(*id*. at ¶¶ 6–7).

Petitioner makes a strong showing that he is not the same person he was twenty years ago. His parole from state custody was due in part to his "exceptional participation in self-help or

7

rehabilitation or other exemplary conduct," and the habeas petition includes a letter from the City of Richmond Chief of Police stating that he believes petitioner "has demonstrated that he can have a powerful impact on at-risk young adults — and is someone whose help we need in Richmond to assist us with our violence-reduction efforts" (Habeas at Exh. C, D). The [Bureau of Prisons], however, is allowed to consider these current reflections of petitioner's character without amending his PSR. Because the [Bureau of Prisons] takes into consideration information subsequent to the creation of the PSR, petitioner has not demonstrated any prejudice in being restricted from amending his PSR. Accordingly, petitioner's claim is **DENIED**.

### 4. UNLAWFUL DETAINER.

Petitioner's fifth habeas claim states in its entirety:

> Petitioner's unlawful detention between October 7 and October 11, 2011 deprived him of his due process rights and a hearing triggered by being arrested and taken into custody after release.

(Habeas 10). Petitioner offers no authority for habeas review. Since the California Department of Corrections relied upon the federal detainer on file when petitioner was paroled, which provided the lawful basis for petitioner's detention, it is not clear why petitioner believes his due process rights were violated. It is possible that petitioner objects to the lawfulness of the detainer because he believes his federal sentence had already run (*see* habeas claims 1–3), however, this contention has been considered and rejected above. Thus, petitioner's fifth claim must also be **DENIED**.

**CONCLUSION**

The petition for writ of habeas corpus is **DENIED**. Judgment will be entered in favor of respondent and against petitioner. A certificate of appealability will not be issued. Reasonable jurists would not find "the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). **THE CLERK SHALL CLOSE THE FILE**.

**IT IS SO ORDERED.**

Dated: September 4, 2014.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE